**Leanette N. MINGLE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–1078–A–368.

Court of Appeals of Indiana, Fourth District.

Nov. 1, 1979.

Rehearing Denied Nov. 30, 1979.

Thomas C. Douglas, Anderson, for appellant.

Theo. L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Leanette Mingle appeals her conviction, after trial by jury, of cruelty to her infant son Keith, in violation of IC 1976, 35–14–1–4 (now repealed, Acts of 1976, P.L. 148, § 24), for which she was sentenced to an indeterminate term of one to five years.

Mingle's first four specifications of error relate to one issue, therefore we consider them together. The issue derives from Mingle's endeavor to limit the questions of fact to be decided by the jury to the sole question of Mingle's sanity at the time of the offense. In addition to serving judicial economy, this measure could obviate the

need for what is usually necessary but frequently gruesome evidence.

Prior to commencement of the trial, Mingle filed a "Stipulation by Defendant" and a Motion in Limine. The stipulation was in essence that Mingle would only contest the issue of her sanity. The motion in limine endeavored to exclude evidence as to the nature and extent of her child's injuries. The State refused to agree to the stipulation. Mingle then argued that the motion entitled stipulation was in fact a change of plea.[1] She argued that she pleaded guilty to the offense but reserved the question of her sanity as excusing her from responsibility. The trial court did not accept this, and we believe properly so.

Several states have used a bifurcated trial procedure when a defendant enters a plea of insanity. The difficulties arising from such a procedure have resulted in a body of authority which we find helpful in determining this issue. *People v. Wells*, (1949) 33 Cal.2d 330, 202 P.2d 53, 65, analyzes California's Penal Code § 1026, which provided that where a defendant pleads not guilty by reason of insanity, the issue of insanity is tried separately either by the same or a new jury, in the discretion of the court. In that case, the appellant alleged error in the exclusion of evidence of insanity during the first trial. The court ruled that in the first trial the defendant may show any statutory incapability except insanity, since in the second trial "evidence other than such as is relevant and material to showing full legal insanity is not admissible . . .. Of course, evidence of the circumstances of the homicide can be admitted for what bearing it may have on the issue of sanity . . . but it is only in respect to its bearing on that one issue that it is pertinent." (citations omitted). This

endeavor to separate the issues and evidence of guilt and sanity was held to constitute a denial of due process in *State v. Shaw*, (1970) 106 Ariz. 103, 471 P.2d 715. The reason is that it is impossible to consider separately the *mens rea* element of a crime and the sanity of the defendant during the same period. The practise of excluding evidence of insanity during the first part of the bifurcated trial procedure while permitting other evidence that the *mens rea* did not exist, has been compared to allowing poor eyesight as a defense but not blindness. *See* Louisell & Hazard, *Insanity as a Defense: The Bifurcated Trial*, 49 Cal. L.Rev. 805 (1961). By this reasoning it is impossible to both confess guilt and assert an insanity defense. Because no such plea exists, Mingle could limit the issues only by means of stipulations. Because the State did not agree to the stipulations, the trial court did not err in allowing trial of all the issues or in admitting evidence relevant to issues other than the sanity of Mingle.[2] *See Klinedinst v. State*, (1953) 159 Tex.Cr. 510, 265 S.W.2d 593, cert. den. 347 U.S. 930, 74 S.Ct. 534, 98 L.Ed. 1082.

Mingle's next contention of error is that the trial court erred in refusing to direct a verdict in her favor at the close of the State's case in chief. Because Mingle subsequently offered proof on her own behalf, any error with regard to the motion for directed verdict is waived. In any case, Mingle's argument ignores the testimony of two witnesses to whom Mingle admitted that she had abused her son. This is sufficient to avoid a directed verdict on the grounds argued by Mingle.

Mingle charges the trial court with error in admitting into evidence four photographs taken of Keith in the Emergency Room of Community Hospital. In addition to chal-

---

1. Mingle also argued in terms of waiving defenses. These matters are "defenses," however, only in the sense that if the State fails in its burden of proof, the defendant must be acquitted. Thus, Mingle's waiver of defenses is in fact synonymous with stipulation.

2. Even if the trial had been limited to the question of Mingle's sanity, we do not know how a

person's state of mind at a given moment could be established with any certainty without examining in detail his conduct in that moment. *See Fitch v. State*, (1974) 160 Ind.App. 697, 313 N.E.2d 548. *See also, People v. Kimball*, (1936) 5 Cal.2d 608, 55 P.2d 483; *Sagu v. State*, (1923) 94 Tex.Cr.R. 14, 248 S.W. 390; *Commonwealth v. Buccieri*, (1893) 153 Pa. 535, 26 A. 228.

lenging their relevance, Mingle claims that they were admitted upon insufficient foundation, that they were repetitive of each other, and that the State exacerbated their inflaming quality by asking four different witnesses to identify them, thus repeatedly bringing them to the jury's attention.

 Regarding the foundation for their admittance, Mingle argues that the officer who took the photographs did not know from firsthand knowledge that the child was Keith. There is much authority on the question of what foundation must be laid before a photograph may be admitted into evidence. Mingle cites none for our benefit. The error is waived under Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). *Murphy v. State*, (1977) Ind., 369 N.E.2d 411; *Williams v. State*, (1973) 260 Ind. 543, 297 N.E.2d 805.

 We have examined the photographs in question, and find that they are not in fact repetitive. The child's entire body was bruised and the bruises were of varying age. The first photograph depicted the front of the child. The second was of the top of his head, showing hair had been pulled out and a hematoma. The third photograph showed the upper back and shoulders, and the fourth, the back and legs. One photograph would have been inadequate to depict Keith's condition upon admittance to the hospital.

 We find further that there was no error in permitting four witnesses to identify the photographs. The photographs served to illustrate the testimony of each, and the record discloses that in fact the photographs were shown to the jury only once, after all four witnesses had testified. We perceive no undue emphasis in these circumstances.

 Other evidence of Keith's injuries to which Mingle objects includes hospital records and the testimony of a foster mother with whom Keith was placed upon his discharge from the hospital. Mingle argues that the hospital records were admitted upon insufficient foundation. Because Mingle has not specified in what regard the

foundation was insufficient, has cited no authority, and indeed has not argued the issue, we deem it waived. AR. 8.3(A). Regarding the witness, Mingle argues that her testimony as to the extent of Keith's injuries, and his condition long after the abuse, was irrelevant and prejudicial in that it placed undue emphasis on Keith's injuries and "tended to detract the jury's attention from the real issue in the case." We would repeat that Mingle was not just charged with sanity. That Keith now suffers partial paralysis is certainly an indication that his injuries were not the result of falling out of his crib or reasonable discipline by his mother, but rather an act of cruelty. Mingle's sanity is an important element, but it is not the only "real" issue. It is the act of cruelty which the legislature has designated as criminal, and for which Mingle faces prison.

 Mingle contends that the trial court erroneously permitted the State to call witnesses in rebuttal whose testimony merely repeated their testimony in the State's case in chief. The matter of rebuttal is committed to the discretion of the trial judge and his rulings will be disturbed only upon a showing of abuse of discretion and resulting prejudice. *Layton v. State*, (1973) 261 Ind. 251, 301 N.E.2d 633. Similarly, "whether a witness may be re-examined with respect to a fact already testified to by him is within the sound discretion of the trial court." *Shuemak v. State*, (1970) 254 Ind. 117, 258 N.E.2d 158, 159. In the present case, the trial court judge acknowledged that the testimony was repetitive. However, the testimony pertained to the sanity issue, and in the normal course of events would have been offered in rebuttal. The trial judge indicated that the testimony during the State's case in chief was premature and anticipatory of the defense, and with apologies to the jury, allowed it to be repeated in its proper place. We do not perceive this to be a clear abuse of discretion, nor was the testimony unduly emphasized. In the interim, days passed and much highly technical psychiatric evidence was given. There was expert testimony

upon which the jury might have relied in finding Mingle sane at the time of the offense. Thus it does not appear that by virtue of one repetition the lay testimony regarding Mingle's sanity acquired such inflated weight in the minds of the jury that Mingle was prejudiced.

■ Mingle next argues that the trial court erroneously permitted the State to tender more than ten instructions, referring us to the Ind. Rules of Procedure, Criminal Rule 8(A). There is no order book entry reflecting that a greater number was permitted. In *Seay v. State*, (1976) Ind.App., 342 N.E.2d 879, it was held that absent a showing of prejudice, no error will be found in these circumstances. Mingle asserts that the State tendered twice as many instructions as she, and that as a result the final instructions were not evenly balanced between the State's case and the defendant's. We do not feel this is sufficient. Mingle did not attempt to offer more instructions herself, and we cannot speculate as to whether the trial court would or would not have permitted them. Further, we know of no requirement of *numerical* balance in final instructions, and Mingle has not specified in what other respect she was overbalanced.

■ Regarding individual instructions, Mingle has stated them and her verbatim objections in commendable form. Because no argument or citation of authority follows, however, we deem the objections waived. AR. 8.3(A).

Mingle asserts that the trial court ignored her rights under IC 1976, 35–4.1–4–5, which provides that before pronouncing sentence, the court "shall afford counsel for the defendant an opportunity to speak on behalf of the defendant" and shall ask the defendant if he wishes to make a statement on his own behalf. Mingle asserts that the court indicated that it already had determined the sentence prior to allowing counsel to make his statement.

The record does not support this assertion. The trial court's first remark at the sentencing hearing was to ask if Mingle's

attorney wished to make a statement. Mingle had already submitted a written statement which the judge read prior to the hearing, along with numerous letters from interested persons and organizations. Mingle was sworn and questioned by the judge, who formally stated the jury's verdict and asked if there were any reason why sentence should not be pronounced. Mingle's attorney responded that there was none, notwithstanding that he indicated earlier his wish to make a statement. The judge pronounced sentence, and then discussed the question of appeal with Mingle's attorney. In that context he indicated that he would not suspend the sentence but would request a complete evaluation of Mingle from the Indiana Diagnostic Center. He was concerned that an appeal would cause a lengthy delay in procuring such an evaluation. At that point, Mingle's attorney reminded the judge that he wished to make a statement prior to sentencing. The trial court permitted the attorney to make a statement, to which the State then responded. When the attorneys had concluded, the trial judge explained that the sentence reflected his determination to make available to Mingle the services of the Diagnostic Center and his wish to procure an evaluation unrelated to the trial. The possibility of an appeal was discussed further, and bond, and Mingle's attorney stated that he would inquire whether Mingle might avail herself of the Diagnostic Center without waiting for the appeal to be decided. He indicated that the appeal could subsequently be abandoned. The court reminded him that at that point he had not granted a suspension of the sentence, and the hearing then ended.

■ These circumstances indicate to us that Mingle's attorney wished to make a statement before the judge chose whether or not to suspend Mingle's sentence. The substance of his statement was indeed directed to that question. This is not what the statute addresses. A judge's decision whether a sentence shall be suspended or executed is obviously not "pronouncing sentence," since there must already be a sentence before it can be determined how it

shall be served. As we observed above, the trial court judge formally asked if there were any reason why sentence should not be pronounced against Mingle. This is the form of the common law allocutus, the requirement of which is codified in IC 1976, 35–4.1–4–5. *See* Annot. 96 A.L.R.2d 1292 (1964). Mingle's attorney responded that there was none. The statute only requires that the opportunity be offered. Mingle has demonstrated no error.[3]

■ Mingle's final contention is that her sentence, although authorized by statute, is unreasonable under the circumstances. She implies that the trial court judge ignored the criteria listed in IC 1976, 35–4.1–4–7. Rule 2 of the Rules for the Appellate Review of Sentences provides that a sentence authorized by statute will not be revised "unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed." Further, a decision not to suspend a sentence is reviewable only for an abuse of discretion. *Fortner v. State*, (1973) 158 Ind.App. 17, 301 N.E.2d 522.

■ Upon reviewing the record in this cause, we cannot say that no reasonable person could find Mingle's sentence appropriate. The offense is grave. Mingle beat the child not once but on several occasions, resulting in his near-death and permanent impairment. Her hostility to the child was disclosed in the course of trial and was discussed in various professional evaluations included in the record. Notwithstanding her claim of rehabilitation, reports from the Diagnostic Center indicate otherwise and state further that if returned to serve her sentence, Mingle would be expected to make an above average adjustment. Mingle points out that there is no specific recommendation that she be incarcerated. We believe that it is the function of the sentencing judge to draw his own conclusions based on the information furnished him. Unless the result is manifestly unreasonable, it is not our function to interfere. In

the present case we find the sentence reasonably appropriate to the offense and the offender.

The trial court is in all respects affirmed.

MILLER, P. J., and CHIPMAN, J., concur.

---

3. Even if there were error, it would not be a matter for reversal in this case. *See Penn v.* *State*, (1962) 242 Ind. 359, 177 N.E.2d 889, 179 N.E.2d 283.