**Michael Arvil BROOKS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 984S363.

Supreme Court of Indiana.

Sept. 3, 1986.

William D. McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stephenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Michael Arvil Brooks was convicted, following a trial by jury, of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1984 Supp.). The judge sentenced him to a prison term of nineteen years and six months. Appellant raises the following issues in this direct appeal:

1) Whether there was sufficient evidence to identify him as the perpetrator of the robbery;

2) Whether the court erred in allowing amendment of the charging information;

3) Whether the court erred in admitting evidence seized pursuant to a consent to search given by defendant's wife;

4) Whether the court erred in admitting certain letters purportedly written by him;

5) Whether the court erred in excluding certain letters written by State's witness Cathy Toy;

6) Whether the court erred in refusing preliminary and final instructions on the lesser included offenses of theft, conversion, and receiving stolen property;

7) Whether the court erred in allowing the State to tender forty final instructions and in failing to hear objections to final instructions until after the jury had retired;

8) Whether the judge's intervention and comments on the proceedings deprived the defendant of a fair trial; and

9) Whether the statement of aggravating circumstances given by the court sufficiently supported the enhancement of the sentence.

These are the facts which tend to support the judgment of the trial court. On February 10, 1983, at approximately 10:30 a.m., two men robbed the Ingalls branch of the Pendleton Banking Company. The bank manager and two tellers who were present described one man as approximately six feet to six feet two inches tall, wearing a knit cap, leather jacket and sunglasses. The other robber was described as several inches shorter, wearing a nylon stocking over his head and carrying a sawed-off shotgun. At the robbers' direction, the tellers emptied their cash drawers. A silent alarm and surveillance camera were activated by the removal of "bait" money, which was kept in a separate compartment and recorded by serial number for use only in such a contingency. Taking over ten thousand dollars, the robbers left in a 1974 black over brown car, "a Chrysler product," with a loud muffler.

Arriving on the scene moments later, State Police obtained a description of the robbers and the vehicle. While conducting an air search, State Police pilot John Kelley spotted a car meeting the description parked in the brush behind a mobile home in a rural area of Madison County and notified Trooper Tim Denney. Denney was familiar with the location of the mobile home and its occupants; he proceeded there.

Denney knocked on the front door, which was answered by Melanie Brooks, the defendant's wife. Denney identified himself and asked if Mike Brooks was there. Mrs. Brooks responded that he was not. Receiving permission to enter, Denney stepped inside and heard a noise from the back of the mobile home. When asked who was there, Mrs. Brooks admitted that her husband was present. After Denney called to Brooks several times, Brooks emerged from the bedroom, wearing a black t-shirt with white lettering and a white elastic rib brace worn over the shirt. Denney explained that he was investigating a bank robbery and asked Brooks to start the vehicle parked outside so that he could listen to its muffler. Brooks responded that the car was not his and that it belonged to John Gordon Smith, who then made his presence known.

Several other State Police officers and F.B.I. agents arrived. Mr. and Mrs. Brooks and Smith were advised of their *Miranda* rights, and a witness was summoned from the bank to attempt an identification of Smith. While escorting Smith outside, Trooper Maurice Cooper noticed a bulge in the leather jacket Smith was wearing. Fearing that Smith had a weapon, Cooper conducted a limited search and discovered several thousand dollars in Smith's jacket, including all the bait money stolen from the bank.

A search of the mobile home revealed money wrappers with identifying teller numbers used by the bank and a large quantity of currency hidden in the bedroom. The amount of money recovered from the search of Smith and of the mobile home was one hundred dollars short of the amount taken in the robbery.

At trial, Melanie (Brooks) Smith, now divorced from appellant, testified that John Gordon Smith had arrived at the mobile home at approximately 6:30 a.m. on the morning of the robbery. Smith mentioned that he needed money. At about 8:30 a.m., Mrs. Brooks began doing laundry, carrying it to and from a relative's house located nearby. On one such trip during mid-morning, she did not see defendant and Smith in the mobile home and noticed that Smith's

car was gone. They were both present when she returned late in the morning. When Brooks saw police cars approaching, he and Smith ran to the bedroom, emerging later at Trooper Denney's repeated requests.

Though none of the bank personnel could identify Brooks or his accomplice, teller Nancy Griggs testified that Smith was the same build as the taller robber. Teller Carol Phillips testified that defendant was built similarly and had the same color hair as the shorter robber. Photographs taken by the surveillance camera did not lead to positive identifications, either, but they did show the shorter robber wearing a dark shirt with lighter lettering and a light band in the area of his ribs.

Cathy Toy, with whom defendant had corresponded while incarcerated, testified about the contents of certain letters written to her by the defendant. Portions of these letters were read to the jury. The letters referred to Brooks' abilities as a bank robber, his hesitancy to send photographs of himself at the time of the robbery, and his "partner," John Gordon Smith.

Though accomplice Smith did not testify, the defense and State stipulated that he pleaded guilty to this bank robbery charge.

### I. Sufficiency of the Evidence

■ Appellant alleges that because no eyewitness could identify him as one of the robbers and because the evidence against him is entirely circumstantial, the evidence is insufficient to support a conviction. However, circumstantial evidence alone may support a conviction. *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 523. When the sufficiency of circumstantial evidence is in question, such evidence need not be adequate to overcome every reasonable hypothesis of guilt. Circumstantial evidence is sufficient if an inference may reasonably be drawn from that evidence which supports the verdict. *Lovell v. State* (1985), Ind., 474 N.E.2d 505, 507. Though evidence is circumstantial, a verdict upon which reasonable men may differ will not

be set aside. *Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1081.

■ The standard of review for a verdict supported by circumstantial evidence is identical to that used when the evidence is direct. We will neither reweigh the evidence nor resolve questions of credibility but will look to the evidence and all reasonable inferences therefrom which support the verdict of the jury. If there is evidence of probative value from which the trier of fact could reasonably infer the existence of each element of the crime beyond a reasonable doubt, the conviction will be affirmed. *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 523.

■ The presence of the get-away vehicle, the accomplice, and the ill-gotten gains of the robbery at the defendant's home, together with the defendant's resemblance to the description of the robber and the surveillance photographs, led the jury to conclude that Brooks was the individual who robbed the Ingalls branch of the Pendleton Banking Company. The evidence was sufficient to support the jury's verdict.

### II. Amendment of Information

Brooks was charged with robbery, a class B felony, by information filed February 11, 1983. The information alleged:

INFORMATION FOR
COUNT I:
ROBBERY
CLASS B FELONY
I.C. 35-42-5-1

On or about the 10th day of February, 1983, in Madison County, State of Indiana, John Gordon Smith and Michael Arvil Brooks, did knowingly and by threatening the use of force, to-wit: Pointing a weapon at Carol Phillips and by putting said Carol Phillips, in fear, take property, to-wit: United States Currency in excess of Ten Thousand ($10,-000.00) Dollars, from the person of Carol Phillips and Nancy Griggs, both being employees of the Pendleton Banking Co. at the Ingalls branch in Madison County, Indiana.

On March 14, 1984, six days before trial, the State moved to amend the information, requesting that the word "deadly" be inserted before the word "weapon." On March 19, 1984, the court granted the State's request and instructed the defendant to notify the court if a continuance would be requested.

■ Appellant now alleges that the amendment of the information was error, in that it substantially prejudiced his rights and denied him his right to a speedy trial. Amendment of an information is proper at any time in order to correct any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant. *Radford v. State* (1984), Ind., 468 N.E.2d 219, 222; Ind.Code 35–34–1–5(c) (Burns 1984 Supp.). In deciding whether an amendment is one of form or substance under the prior code, Ind.Code § 35–3.1–1–5 (Burns 1979 Repl.), repealed by Acts 1981, P.L. 298, § 9 and § 10(c) effective September 1, 1982, this Court held that an amendment is of substance only if it is essential to the valid making of the charge. If a defense under the original information would be equally available after the amendment and the defendant's evidence would be equally applicable to the information in its amended form, no substantial prejudice has occurred. *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217, 1221.

Brooks was charged with violating Ind. Code § 35–42–5–1 (Burns 1984 Supp.), which provides:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon.

Therefore, a class B robbery occurs when a deadly weapon is used; a class C robbery occurs when no weapon is used. Such a distinction was made in the charging information when it alleged that the robbery was committed by "pointing a weapon at Carol Phillips...." The information also charged the robbery as a class B felony. The information adequately informed Brooks of the charges against him so as to enable him to make a defense. *Trotter v. State* (1981), Ind., 429 N.E.2d 637, 640. Further, the appellant has alleged no defense to the charge of robbery with a *deadly* weapon that he was unable to present because he was misled in the belief that the charge was robbery with a mere *weapon.*

Moreover, had the amended charge altered Brooks' theory of defense, a continuance was available. Defendant had moved for a speedy trial on January 27, 1984, and trial was set for March 20, 1984. Trial ultimately commenced on March 27, 1984. Brooks now contends that, had he accepted the offered continuance, he would be forced to forego his right to a speedy trial. However, as the State points out, any trial date before April 8, 1984, would have satisfied the requirements of a speedy trial. Ind.Rules of Criminal Procedure, Rule 4(B). The defendant would not have been precluded from asserting his right to a speedy trial even had he accepted the offered continuance.

Brooks was not substantially prejudiced by the amendment, and it did not interfere with his right to a speedy trial. The court properly allowed the amendment.

### III. Search and Seizure

■ Appellant challenges the admission of the money wrappers and photographs of the currency seized during a warrantless search of his home. Defendant made a pre-trial motion to suppress the fruits of this search, which the court denied. However, defendant did not object to either the wrappers or photographs when offered at trial, nor did he object to testimony regarding the search itself. Even though a motion to suppress has been overruled prior to trial, an error is not preserved unless an objection is made when the evidence is offered at trial. *Haynes v. State* (1982), Ind., 431 N.E.2d 83, 85. However, even had Brooks objected to this evidence at trial,

such an objection would have been unsuccessful.

██ A warrantless search is presumed unreasonable, and the State bears the burden to show that the search falls under an exception to the warrant requirement. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365, 1368. In this case, the State presented evidence that the search was conducted pursuant to the valid consent of the defendant's wife. Consent to search given by a third party having common authority over the premises is sufficient to justify a warrantless search. *Id.*

Brooks alleges that his wife's consent was not given voluntarily. A consent is valid except where it is produced by fraud, duress, fear, intimidation or where it is a mere submission to the supremacy of the law. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 183. When reviewing a trial court determination of the validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. The test is sufficiency of the evidence. *Bruce v. State* (1978), 268 Ind. 180, 234, 375 N.E.2d 1042, 1071.

██ Appellant asserts that his wife consented to the search only because she was threatened with arrest. Melanie (Brooks) Smith testified that an unidentified officer indicated that she "could be in the same place as John and Mike was." This testimony was contradicted by officers present during the search, who testified that they did not make nor did they overhear any other officer make such a statement.

Additionally, Mrs. Brooks signed a consent form, which read:

I, Melanie Lenore Brooks, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize S.A. Michael L. Celo—Jim Rhinebarger, I.S.P., and S.A. Donald Goulet—

Maurice L. Cooper, I.S.P., Special Agents of the Federal Bureau of Investigation, United States Department of Justice, to conduct a complete search of my premises located at R.R. 1 Box 195 Pendleton, Ind. These agents are authorized by me to take from my premises any letters, papers, materials or other property which they may desire.

This written permission is being given by me to the above-named Special Agents voluntarily and without threats or promises of any kind.

Melanie Brooks /s/

This form was read to her, and she indicated her understanding of the rights enumerated. In a statement later given to police, she reiterated that her earlier consent to search had been given voluntarily.

Thus, Mrs. Brooks was advised of her rights, consented to a search, signed a written consent, and later reaffirmed the voluntariness of that consent. This evidence outweighs the unconfirmed and contradicted evidence of any threat. The trial court was justified in determining that the consent was voluntary, and the money wrappers and photographs were properly admitted.

### IV. Authentication of Letters

Appellant challenges the admissibility of State's exhibits 62 and 63, two letters in an ongoing correspondence between defendant and Cathy Toy. The State alleged that the letters, which alluded to participation in the robbery, were written by defendant. Appellant charges that neither document was sufficiently authenticated. Generally, proof of authentication is required before documents may be admitted; the admissibility of such documents is within the discretion of the trial court and will be reversed only on a clear showing of error. *Ashley v. State* (1986), Ind., 493 N.E.2d 768, 773.

Melanie (Brooks) Smith identified the handwriting in the majority of the letters offered as that of defendant. She also testified about appellant's frequent use of certain phrases and the familiar "smiley

face" insignia. This authentication is sufficient, as anyone familiar with a person's writing is competent to give an opinion as to the genuineness of his handwriting. *Spencer v. State* (1958), 237 Ind. 622, 626, 147 N.E.2d 581, 583. However, exhibits 62 and 63 were not identified by Melanie, and appellant argues that this renders the authentication insufficient.

■ The two letters in question were identified by Toy as letters she had received from the defendant. The envelopes bore the defendant's return address, and the letters were signed "Michael." These letters contained the same phrases identified by Ms. Smith in the earlier letters, as well as the "smiley face" insignia. Additionally, the letters referred to family matters confirmed by defendant's mother, details of the pending charges against defendant and Toy, and descriptions of tattoos worn by Brooks (the latter verified by an inspection in court).

Authentication has been deemed sufficient when the witness knew the alleged author and had corresponded with him, and where the envelope bore the author's return address and the letter contained familiar references and the author's signature. *Kern v. State* (1981), Ind., 426 N.E.2d 385, 387. Likewise, the authentication in this case was sufficient to support the admission of these exhibits.

### V. Exclusion of Letters from Toy

■ Defendant also offered letters Toy wrote to him; these contained fantasies of a sexual nature which appellant claims show Toy's "depraved character" and therefore should have been admitted for purposes of impeachment. Appellant notes this Court's statement that the "well-recognized rule that any fact tending to impair the credibility of the witness by showing ... that he is depraved in character, may be shown on cross-exmination ..." *Dotterer v. State* (1909), 172 Ind. 357, 362, 88 N.E. 689, 692. However, the balance of that statement is that "... the extent to which such cross-examination may be car-

ried is within the sound discretion of the court." *Id.*

The letters do not refer to any actual occurrence, but are based entirely on the imagination of the author. Appellant's argument therefore is seemingly based on the opinion that the writing of these letters is a bad act which reflects adversely on the moral character of the witness. The letters are not proper impeachment evidence for this purpose. "[T]he general rule is a witness cannot be impeached by attempting to show specific acts of immorality." *Polson v. State* (1965), 246 Ind. 674, 207 N.E.2d 638, 640. The proper method for challenging the witness' general moral character is by proof of general reputation. *Griffith v. The State* (1894), 140 Ind. 163, 166, 39 N.E. 440, 441. Further, a witness' bad reputation for chastity is not proper to impeach general character. *Kidwell v. State* (1878), 63 Ind. 384, 385. The letters were properly excluded as impeachment evidence.

The appellant further argues the the letters authored by Toy could serve as handwriting comparisons to the letters allegedly authored by defendant. It is defendant's contention that the letters were forged by Toy and that such forgery would be detected by the jury upon comparison. However, it is unclear from the record that the letters written by the defendant were ever seen by the jury; it appears that portions of the letters were simply read in court. Moreover, the judge offered to admit portions of Toy's letters for the purposes of handwriting comparison if the objectionable portions were redacted. The defendant refused the offer and thereby waived any error in the exclusion of the letters as handwriting exemplars.

### VI. Preliminary and Final Instructions

Appellant offered preliminary and final instructions on the elements of theft, conversion, and receiving stolen property; the court refused these instructions, and appellant urges the rejection as error.

Brooks argues that the court "has the duty to preliminarily instruct the jury as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received," citing *Pollard v. State* (1979), 270 Ind. 599, 610, 388 N.E.2d 496, 505 and Criminal Rule 8(F). Since theft and conversion are potential lesser included offenses of the charged crime of robbery, Brooks concludes that the occurrence of a lesser included offense is "an issue to be tried," and therefore deserving of preliminary instruction.

 This argument avoids an essential analytical step. A determination of the necessity for giving an instruction on a lesser included offense includes an examination of the statutes and indictments and of the evidence presented at trial. *Humes v. State* (1981), Ind., 426 N.E.2d 379, 382. Obviously, this test cannot be applied until evidence is heard. Therefore, it is impossible to determine preliminarily whether an instruction on a lesser included offense is appropriate. The trial court did not err in failing to do the impossible.

Appellant also predicates error on the refusal of the trial court to give final instructions on the same offenses. This claim can now be assessed by applying the two-step test mentioned above:

First, an examination of the statutes and the charging information or indictment must indicate that a conviction of the crime charged necessitates proof of all the essential elements of the lesser offense and of the distinguishing element. The second step is to examine the evidence presented at trial for the element which distinguished the two offenses. *Jones v. State* (1986), Ind., 491 N.E.2d 980, 982.

Therefore, we first examine the potential lesser included offenses in light of the essential elements of class B robbery: the accused must knowingly take property from another person by using or threatening to use force, while armed with a deadly weapon.

Appellant offers theft as a potential lesser included offense, the elements of which

are: the accused must knowingly take property of another person with intent to deprive the other person of its value. Therefore, a conviction of class B robbery requires proof of all the elements of theft, with the additional distinguishing elements of threatening or using force and being armed with a deadly weapon.

Likewise, these elements distinguish robbery from conversion, which requires proof that the accused knowingly or intentionally exerted unauthorized control over property of another.

 While the elements of theft and conversion are included in the elements of robbery, receiving stolen property is not. The elements of that crime require that the accused knowingly or intentionally receive, retain or dispose of property of another person that has been the subject of theft. A conviction for robbery does not necessitate proof of all the elements of receiving stolen property, and therefore it fails to qualify as a lesser included offense.

 Though theft and conversion are included in the crime of robbery, this alone is not sufficient to require an instruction on these offenses. The evidence at trial must be examined for the element which distinguishes the crimes, in this case, the threat of force and being armed with a deadly weapon. If there is evidence of probative value on the distinguishing element which would not result in a compromise verdict, an instruction on the lesser included offense would be proper. *Id.* However, it is not error to refuse such an instruction when there is no question that all the elements of robbery are present. *Rogers v. State* (1979), 272 Ind. 65, 74, 396 N.E.2d 348, 354.

Here, there is strong evidence that the robbery was committed by the threat of force and while armed with a deadly weapon. Both tellers and the bank manager testified that they were frightened during the robbery and that the robbers threatened to "blow their heads off." They also testified about the presence of a weapon, which is confirmed by the surveillance pho-

tographs. In light of this uncontraverted evidence on these two distinguishing elements, it would not be possible to find that Brooks committed the taking of property required by the elements of theft or conversion without also finding that he committed the additional elements of threatening force and using a deadly weapon as well. Any verdict of guilty of conversion or theft would be a compromise between those jurors who believed Brooks to be guilty of the crime of robbery and those jurors who believed that he did not participate in the robbery at all. Such a verdict would not be acceptable. The court correctly refused the tendered instruction.

### VII. Settling on Instructions

Brooks alleges error in the procedure followed by the court in the tendering and settling of final instructions. At the State's request, the court granted the parties leave to file more than ten final instructions. Defendant argues that the court did not follow the correct procedure in doing so, with prejudice resulting from the excessive number of intructions filed by the State and the lack of preparation time allowed for him to file additional instructions. Brooks further challenges the court's failure to hear objections to final instructions until after the jury had retired for deliberations.

The giving of instructions is within the discretion of the trial court; its decision will be overturned only on a showing of abuse of that discretion. *Tanner v. State* (1984), Ind., 471 N.E.2d 665, 667. Criminal Rule 8(A) establishes the number of final instructions tendered by the parties at ten, but allows the trial court, in its discretion, to fix a greater number, "which number shall be stated of record by an order book entry made by the court."

On the afternoon of April 3, the parties were informed that they would be expected to tender their proposed final instructions the next morning. At that time, the State requested permission to file more than ten instructions. The court granted this request. Though the defendant later alleged surprise at the ruling of the court, it appears from the record that defense counsel was present at the time the ruling was made, though he was conferring with a member of his staff. The State tendered forty instructions.

The next day, during a conference to settle on final instructions, the defendant objected to the number of instructions filed by the State and pointed out to the court that an order book entry should reflect that the court had fixed a greater number than ten. The court then made an order book entry reflecting its earlier ruling and offered defense counsel a continuance to draft any other instructions he felt necessary. Counsel replied that he really did not want any instructions other than those already tendered; he merely objected to the State's additional instructions. However, because the State was allowed additional instructions, he requested a continuance of one day to draft additional instructions of his own. The court denied this request and granted a continuance of ninety minutes. Following this continuance, the defense tendered additional instructions.

Appellant contends that this procedure resulted in "saturating" the defense with too many instructions to consider properly; he also argues that a ninety-minute continuance was an unreasonable time in which to draft thirty additional final instructions. The result, he says, was that the jury received repetitive, irrelevant, and confusing instructions.

Reviewing the instructions as given, we do not find them to be misleading or particularly confusing. Appellant has not mentioned any particular instruction that he was unable to tender, nor has he shown any prejudice in the intructions as given. Though we do not approve of the State's practice of inundating the defense, and the court, with repetitive, unnecessary instructions, these instructions did not reach the jury. The court rejected nearly three-quarters of the State's tendered instructions. Absent a showing of prejudice, no error will be found. *Mingle v. State* (1979), 182 Ind.App. 653, 658, 396 N.E.2d 399, 404.

■ Appellant also argues that he was not allowed the opportunity to object to final instructions before the jury retired for deliberations. Criminal Rule 8(B) requires that each party have a reasonable time to object to instructions before argument. We find that such an opportunity was afforded. The court informed the parties that, in the interest of time, a record would be made of objections to final instructions after the jury had retired. However, proposed instructions were submitted to the parties and oral objections were entertained prior to argument. The court merely requested that detailed objections intended to preserve the record for appellate review be reserved and that only "glaring errors" be pointed out before the instructions were submitted to the jury.

Though appellant points out the potential danger of discovering an error in instructions after the jury has retired, no such harm occurred here. Defendant did object to the failure to instruct on lesser included offenses and the number of instructions submitted by the State prior to argument. These are the only errors he argues on appeal. He does not point to any objection that he was foreclosed from making. The parties were afforded an adequate opportunity to object to instructions prior to argument, and defendant did not suffer any prejudice from deferring more specific objection until after the jury retired.

### VIII. Impartiality of Judge

■ Brooks argues that the trial judge's "excessive intervention" and "unwarranted comments" deprived him of a fair trial. He correctly asserts that the trial judge has a duty to remain impartial.

A trial court should refrain from making unnecessary comments and should remain impartial. Moreover, a trial judge's conduct should be such that his remarks or apparent attitude do not impart to the jury an appearance of partiality. It is important, however, that the trial court control the proceedings by taking responsible steps to insure that proper discipline and order exist in the courtroom.

*Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107. The court must strike a balance between impartiality and control. Rulings on procedural and evidentiary questions by nature are adverse to one of the parties, but partiality cannot be inferred from proper rulings.

Appellant characterizes the comments of the judge as "sarcastic," "caustic," and "sharp." While intonation can not be determined from the record, the judge's comments appear to be attempts to control the proceedings. Implicit in the judge's duty to control the proceedings is the power to give reasonable admonitions to witnesses and counsel and direct the taking of testimony. *Lawson v. State* (1980), 274 Ind. 419, 431, 412 N.E.2d 759, 768. As illustrations of the judge's partiality, appellant points to the court's direction to defense counsel to stand near the bench, enabling him to better see an exhibit, the court's admonishments that counsel not argue with witnesses, and the court's control of testimony by restraining counsel from excursions into collateral and irrelevant areas of law. We find that none of these comments reflect any partiality on the part of the judge.

Moreover, defendant was not so moved as to object or move for a mistrial at the time the allegedly objectionable comments occurred and has thus not properly preserved any error for appellate review. *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 505.

### IX. Sentencing

Finally, Brooks argues that the sentence imposed by the trial court was not sufficiently supported by a statement of aggravating circumstances, and that the trial court erred in improperly considering lack of remorse as an aggravating factor. The presumptive sentence for a conviction of a class B felony is ten years, to which ten years may be added for aggravating circumstances, or four years deducted for mitigating circumstances. Ind.Code § 35–50–2–5 (Burns 1985 Repl.). The court im-

posed a sentence of nineteen and one-half years.

"[W]hen a trial court uses its discretionary power to increase or decrease the basic sentence ... the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence." *Howard v. State* (1984), Ind., 459 N.E.2d 29, 32.

Aggravating factors which the court may consider are set out in Ind.Code § 35-38-1-7 (Burns 1985 Supp.), formerly Ind.Code § 35-4.1-4-7 (Burns 1979 Repl.). However, those factors listed are not exclusive, and the court may, in its discretion, consider other relevant factors. *Mullens v. State* (1983), Ind., 456 N.E.2d 411, 414.

 In this case, the court's entry on sentencing stated:

1) The defendant has a history of criminal activity including the improper use of firearms.

2) Imposition of a reduced sentence would depreciate the seriousness of this offense.

3) There is a substantial risk that the defendant will commit further offenses.

4) The defendant has expressed no remorse for his criminal activities.

We also have before us the transcript of the sentencing hearing. At the sentencing hearing, the State presented evidence that Brooks, while free on bond following this offense, left the state, was involved in a high-speed chase, and fired a shot at an Ohio State Police officer. The court also reviewed and discussed with defendant the pre-sentence report, which revealed Brooks' prior criminal history. The transcript of this hearing contains a more complete statement of aggravating factors:

I suppose even standing alone without any history of criminal activity that this would be classified as a fairly outrageous crime. It's hard for me to imagine anything more terrifying than to a person who is working for a living and some masked bandit to burst in and threaten them with a sawed off shotgun uttering obscenities ... I really think our society is uh had about enough of that kind of stuff ... there is a good deal of aggravation in this case ... The defendant, having been found guilty of robbery, a Class B felony, and the court having entered judgment of conviction against the defendant, Michael Arvil Brooks, and the court having read and considered the argument of counsel and the exhibits that were offered, the court now finds in aggravation: The defendant has a history of criminal activity, including the improper use of firearms. 2. Imposition of a reduced sentence would depreciate the seriousness of this offense. There is a substantial risk that the defendant will commit further offenses, and, 4. The defendant has expressed no remorse for his criminal activity ... [I]t is important to me that I allowed Mr. Brooks to be out on bond. He was already charged with a major felony involving the use of a firearm and from all accounts I have heard here today and before, it seems he got involved in another incident in another state involving the misuse of firearms after I specifically ordered and directed that he have no contact, have no firearms in his possession ... [I]t seems to me that that indicates some kind of disdain for authority ... I just have to take that into consideration. I honestly think it is important and it says something about the kind of person we are dealing with here. The court now sentences the defendant, Michael Arvil Brooks, to the Indiana Department of Correction for a period of 19 years and 6 months.

A similar statement made at sentencing has been held to satisfy sentencing requirements. *Borom v. State* (1984), Ind., 470 N.E.2d 712, 715.

 Further, appellant argues that lack of remorse is not a proper factor for consideration in imposing an increased sentence. He acknowledges "that Indiana de-

cisions have on occasion recognized that lack of remorse is a proper factor to be considered in imposing sentence. eg. *Coleman v. State* (1983), Ind.App., 409 N.E.2d 647." This Court has more recently approved lack of remorse as a proper sentencing consideration, citing *Coleman* with approval. *Mullens*, 456 N.E.2d 411. Appellant now asks us to reconsider such decisions as "ill-advised." We decline his invitation.

The trial court sufficiently articulated its reasons for imposing an enhanced sentence. In light of the circumstances considered by the court, the sentence was reasonable and within the court's discretion. Its decision will not be disturbed.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK, and DICKSON, JJ., concur.