Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 14 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SALVADOR S. CASTRO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A04-1107-CR-344 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause Nos. 39C01-1009-FA-94, 39C01-1010-CM-124

**June 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Salvador S. Castro ("Castro") pleaded guilty to dealing cocaine[1] as a Class A felony, conspiracy to commit dealing cocaine[2] as a Class A felony, and carrying a handgun without a license[3] as a Class A misdemeanor and was given an aggregate sentence of twenty-six years executed. He appeals, raising the following restated issue: whether the trial court abused its discretion in failing to suspend any portion of his sentence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Moria Grigsby[4] ("Grigsby") began using cocaine in June 2010 when Castro and Castro's brother, Nicholas, who also happened to be her boyfriend, introduced her to the drug. On September 8, 2010, Detective Tyson Eblen of the Madison Police Department ("Detective Eblen") set up a controlled buy of cocaine from Grigsby, where Detective Eblen and a confidential informant ("CI") purchased 3.5 grams of cocaine from her with Nicholas present for the exchange. Grigsby obtained the cocaine from Castro, who would drive to Columbus every week to purchase the cocaine. Castro would cut the cocaine with Tylenol pills to increase the amount he could sell and would weigh and package the substance. On September 10, 2010, Detective Eblen set up another controlled buy using the same CI, where the detective exchanged $350 for 3.5 grams of

---

[1] *See* Ind. Code § 35-48-4-1.

[2] *See* Ind. Code §§ 35-41-5-2, 35-48-4-1.

[3] *See* Ind. Code § 35-47-2-1.

[4] We note that Moria Grigsby is spelled "Moriah" in the transcript. *Tr.* at 65. We adopt the spelling used in the charging information and probable cause affidavit of "Moria" in this opinion.

cocaine. On September 14, 2010, Detective Eblen arranged a third buy from Grigsby. During this transaction, Detective Rudy Perez ("Detective Perez") accompanied the CI, and Grigsby gave them 6.5 grams of cocaine for $650.

The police discovered through information provided by the CI that Castro was supplying Grigsby with the cocaine. With this information, the police arranged a controlled buy on September 21, 2010 in which they planned that Detective Perez would give Grigsby $1,400 to take to Castro, and then Castro would provide Grigsby with an ounce of cocaine to sell to Detective Perez. Instead, Castro met directly with Detective Perez, ordered the detective to count out the $1,400, and then handed the detective an amount of cocaine later determined to be approximately 27.5 grams.

On September 22, 2010, the police executed a search warrant on the home of Grigsby and Nicholas and on the home of Castro. At Grigsby's house, the police found forty dollars with serial numbers matching those from the September 21 controlled buy. At Castro's house, the police found cocaine in a small box in Castro's bedroom, and Castro's wallet contained "a large sum of United States currency." *Appellant's App.* at 28. Many of the twenty-dollar bills found in the wallet were confirmed to be from the September 21 controlled buy.

On February 20, 2010, prior to the investigation involving the controlled buys, Castro was stopped by police for disregarding a stop sign. The officer who stopped Castro detected the odor of alcohol on Castro, and a K-9 unit alerted the officers to the presence of contraband on the passenger side door. The officer found a .22 caliber handgun and an open beer can during the search of the vehicle. As a result of this traffic

3

stop, the State charged Castro with carrying a handgun without a license as a Class A misdemeanor and operating a motor vehicle without having received a license as a Class C misdemeanor.

As a result of the controlled buys, the State charged Castro with dealing cocaine as a Class A felony and conspiracy to commit dealing cocaine as a Class A felony. Castro entered an open plea of guilty to both of those charges and to the Class A misdemeanor carrying a handgun without a license charge from his February 20 arrest. The trial court sentenced him to twenty-five years on each of the dealing cocaine and the conspiracy to commit dealing cocaine convictions, with the sentences to run concurrently with each other. Castro was sentenced to one year for his carrying a handgun without a license conviction, which was ordered to be served consecutively to the twenty-five-year sentences for an aggregate sentence of twenty-six years executed. The trial court found five mitigating factors: (1) Castro's age of twenty-four; (2) Castro had no previous criminal history; (3) Castro pleaded guilty with no plea agreement; (4) Castro showed sincere remorse for his actions; and (5) Castro had been an addict since he was sixteen years old. *Tr.* at 128-29. The trial court found the fact that Castro dealt in a large quantity of cocaine and that a light sentence would depreciate the seriousness of the crime as aggravating factors. Castro now appeals.

## DISCUSSION AND DECISION

Castro argues that his sentence was inappropriate in light of the nature of the offense and the character of the offender because the trial court ordered his entire sentence to be fully executed in the Department of Correction. He also contends that the

trial court abused its discretion when it ordered his sentence to be fully executed. He therefore requests this court to revise his sentence under Indiana Appellate Rule 7(B) and suspend a portion of his sentence.

Castro's argument blends the abuse of discretion standard of review applicable to sentencing with Indiana Appellate Rule 7(B) review of the appropriateness of a sentence in light of the nature of the offense and the defendant's character. However, Castro frames his issue as "[w]hether the trial court should have suspended all or a portion of [his] sentence where the record supported a finding that Castro was young, addicted, remorseful[,] and had entered into a plea of guilty without agreement or consideration from the State." *Appellant's Br*. at 1. "The suspension of a sentence is a matter of grace and a judicial favor to a defendant. In other words, a suspended sentence is not something to which a defendant has a right or an entitlement." *Turner v. State*, 878 N.E.2d 286, 296 (Ind. Ct. App. 2007) (citing *Childers v. State,* 656 N.E.2d 514, 516 (Ind. Ct. App. 1995), *trans. denied*), *trans. denied.* The decision not to suspend a sentence is reviewable only for an abuse of discretion. *Id*. (citing *Ables v. State,* 848 N.E.2d 293, 296 (Ind. Ct. App. 2006)). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Gellenbeck v. State*, 918 N.E.2d 706, 711 (Ind. Ct. App. 2009).

The determination of the length of an appropriate sentence within the prescribed statutory range is left to the discretion of the sentencing court, and accordingly, a sentencing court must consult the appropriate statutes to determine the range of possible penalties applicable to a given offense. *Atchley v. State*, 730 N.E.2d 758, 767 (Ind. Ct.

App. 2000), *trans. denied*. When determining the appropriate sentence within the prescribed range, the court may suspend all or a portion of that sentence. *Id*. The sentencing range for a Class A felony is twenty to fifty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. A trial court is permitted to suspend the portion of a sentence in excess of the minimum sentence when the crime committed is a Class A felony and the defendant has no previous felony convictions. Ind. Code § 35-50-2-2(b). Whenever a trial court suspends a sentence for a felony, it shall place the person on probation "for a fixed period to end not later than the date that the maximum sentence that may be imposed for the felony will expire." Ind. Code § 35-50-2-2(c).

Here, if the trial court had suspended any portion of Castro's sentence, it would not have been able to accomplish the requirement under Indiana Code section 35-50-2-2(c) that Castro be placed on probation. When the trial court sentenced Castro, it stated, "in this particular situation, the [trial court] is likely to have no control over any probation, the [trial court] will find that any sentence should be executed." *Tr*. at 129. The trial court would have no control over probation because the United States Department of Homeland Security has an Immigration Detainer on Castro. *Appellant's App*. at 48-50. Therefore, as a result of this Immigration Detainer, Castro recognized that he would "almost certainly" be deported after serving any executed sentence. *Tr*. at 42-43, 123.

The evidence presented at sentencing also showed that Castro was the source of all of the cocaine that Grigsby sold during multiple controlled buys with the police. Castro would obtain the cocaine, cut it with Tylenol to increase the quantity he could sell, weigh

6

and package the drug, and give it to Grigsby and Nicholas to sell. When the police searched Castro's home, they found a fifty-inch and sixty-three-inch television, and Castro testified that he received the fifty-inch television in exchange for three lines of cocaine. *Id.* at 51-52. He also had four vehicles, and Grigsby testified that Castro had enough money that he did not have to cash his paychecks. *Id.* at 84. When Castro was arrested, the police found large sums of money in his wallet, including twenty-dollar bills from the September 21 controlled buy. Based on the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion when it refused to suspend any portion of Castro's sentence.

Affirmed.

BAKER, J., concurs.

BROWN, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

SALVADOR S. CASTRO, )
                     )
    Appellant-Defendant, )
                     )
        vs. )      No. 39A04-1107-CR-344
                     )
STATE OF INDIANA, )
                     )
    Appellee-Plaintiff. )

**BROWN, Judge, dissenting**

I respectfully dissent. Castro, albeit in a somewhat incoherent fashion, requests that we review whether his aggregate twenty-six year sentence is inappropriate in light of the nature of the offense and the character of the offender under Ind. Appellate Rule 7(B). It is true that in discussing this court's power to review sentences under Ind. Appellate Rule 7(B), Castro cites to case law regarding a separate sentence review issue, namely, whether the court abused its discretion in sentencing, and he specifically cites Ables v. State, 848 N.E.2d 293 (Ind. Ct. App. 2006), for the proposition that "[a] decision not to suspend a sentence is reviewable only for an abuse of discretion." Appellant's Brief at 7 (quoting Ables, 848 N.E.2d at 296 (quoting Mingle v. State, 182 Ind. App. 653, 660, 396 N.E.2d 399, 405 (Ind. Ct. App.1979), and citing Morgan v. State, 675 N.E.2d 1067, 1074

8

(Ind. 1996) (holding that a sentence suspension will be set aside "only upon a showing that the trial court abused its discretion")). Also, appearing to rely upon this case law, Castro concludes his argument section by stating: "In light of the substantial mitigating circumstances the trial court abused its discretion by failing to suspend [his] sentence, or part thereof, under Indiana Code Sec 35-50-2-2." Id. at 9 (emphasis omitted).

I note, however, that both Mingle and Morgan were decided prior to the adoption of Appellate Rule 7(B), which occurred in 2000 and became effective on January 1, 2001.[5] Also, the Indiana Supreme Court in Morgan raised *sua sponte* the issue of whether the court abused its discretion in sentencing the defendant where it suspended fifteen years of a thirty-year sentence for possession of cocaine with intent to deliver as a class A felony and noted that, under Ind. Code § 35-50-2-2, "the trial court could only have suspended ten (10) years of defendant's thirty (30) year sentence." 675 N.E.2d at 1074. To the extent that it is suggested that we are not able to order suspended any portion of a defendant's sentence which the trial court was legally capable of suspending in reviewing whether a defendant's sentence is inappropriate, such a statement mischaracterizes the scope of this court's review power under Ind. Appellate Rule 7(B). See Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010) ("We decline to narrowly interpret the word 'sentence' in Appellate Rule 7 to constrict appellate courts to consider

---

[5] Indeed, prior to the adoption of Ind. Appellate Rule 7(B), sentencing decisions were "committed to the sound discretion of the trial court" and we would "reverse a sentence only upon a showing of manifest abuse of discretion." Allen v. State, 722 N.E.2d 1246, 1250 (Ind. Ct. App. 2000). The Indiana Supreme Court had recognized "that a certain degree of subjectivity 'cannot be eliminated' from the sentencing process," and stated "'that it is inappropriate to substitute the opinion of an appeals court regarding sentencing' for that of the trial court." Id. (quoting Hurt v. State, 657 N.E.2d 112, 114 (Ind. 1995)). Thus, we would "not revise a sentence unless it is 'manifestly unreasonable in light of the nature of the offense and the character of the offender.'" Id. (quoting Thacker v. State, 709 N.E.2d 3, 10 (Ind. 1999) (quoting Ind. Appellate Rule 17(B)), reh'g denied).

9

only the appropriateness of the aggregate length of the sentence without considering also whether a portion of the sentence is ordered suspended or otherwise crafted using any of the variety of sentencing tools available to the trial judge."); see, e.g., Eiler v. State, 938 N.E.2d 1235, 1239-1240 (Ind. Ct. App. 2010) (reviewing whether the defendant's sentence of twenty-two years with four years suspended for dealing cocaine as a class A felony was inappropriate in light of the nature of the offense and the character of the offender and imposing a modified sentence of twenty-two years with ten years suspended), reh'g denied.

Castro in his argument section also cites to the fact that the court identified five mitigators and only two aggravators. Although the aggravators and mitigators identified by the trial court may be examined in the context of whether the court abused its discretion in sentencing the defendant, here it appears that Castro raised the identified aggravators and mitigators in making argument related to Appellate Rule 7(B). Indeed, the only case law examined by Castro regarding aggravators and mitigators is Hundley v. State, 951 N.E.2d 575 (Ind. Ct. App. 2011), trans. denied, for the proposition that "[t]his Court assesses 'the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate.'" Appellant's Brief at 7 (quoting Hundley, 951 N.E.2d at 584 (examining whether the defendant's sentence is inappropriate in light of the nature of the offense and the character of the offender) (citing Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006))).

Thus, this court should review whether Castro's aggregate twenty-six year

10

sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As to the nature of the offenses, the record reveals that members of the Madison Police Department set up three controlled buys of cocaine with Grigsby, and at one point the police discovered that Castro was supplying Grigsby with the cocaine she was selling. Based upon this information, a controlled buy was set up between Grigsby and Detective Perez which was intended to implicate Castro, but instead Castro met directly with Detective Perez and sold 27.5 grams of cocaine to Detective Perez in exchange for $1,400. The next day, the police executed a search warrant on the homes of Grigsby and Nicholas and Castro. The search of Castro's home revealed cocaine in a box in his bedroom, and his wallet contained a large sum of currency including twenty-dollar bills which were attributed to the controlled buy from the day before. Also, Castro was stopped while driving in February 2010, seven months before the search of his home, for disregarding a stop sign and was found to be in possession of a .22 caliber handgun for which he did not have a license.

A review of Castro's character reveals that he is not a United States citizen and is undocumented. He has been residing in the United States since December 2006. Castro

does not have any previous felony or misdemeanor convictions. At the time of his arrest, he had been working for R&T Steel for the past eighteen months. Castro has been married to a woman named Shelly Westerman since 2009 and helps to support her two children from a previous relationship.

Based upon my review of the record, and especially in light of the fact that Castro has no previous convictions and that he faces deportation upon his release from prison, I would find that Castro's sentence is inappropriate. Recognizing as the trial court did that Castro faces deportation and that therefore probation would effectively not be available, I would modify his sentence to twenty years executed for both the dealing cocaine and conspiracy to commit dealing cocaine convictions to be served concurrently, plus one year suspended for the carrying a handgun without a license misdemeanor conviction, for an aggregate sentence of twenty years.